# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EILEEN STUBBE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 14 C 10442 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendant. | ) | |

## ORDER

Plaintiff Eileen Stubbe ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits Title II of the Social Security Act. For the reasons discussed more fully below, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 17].[1]

## STATEMENT

Plaintiff, a 63-year-old woman, applied for disability insurance benefits on March 11, 2011, under Title II of the Social Security Act. (Administrative Record ("R.") at 258.) Plaintiff's application was denied by the Social Security Administration ("Administration") on August 22, 2011, and upon reconsideration on April 20, 2012. Plaintiff then requested a hearing in front of an Administrative Law Judge ("ALJ") to appeal the Administration's decision; that request was granted, and a hearing in front of an ALJ was held on January 15, 2014. (R. at 13.)

---

[1] The Court hereby construes Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment [17] as a motion; no motion was filed with Plaintiff's brief.

The medical records in this case show that Plaintiff suffers from several conditions. She has had two shoulder operations, including a repair of her rotator cuff in 2007 and a partial left shoulder replacement in 2008. (R. at 399, 757). Ms. Stubbe testified at her hearing that her left shoulder has become arthritic following the surgery, and the medical records support that contention. (R. at 26, 692, 751, 782.) Diagnostic imaging taken on May 31, 2013, showed that Plaintiff's left shoulder showed a possible subluxation of the prosthesis that had been put in during her shoulder replacement surgery. (R. 751.)

Additionally, Plaintiff suffers from deformities in her right foot, including halleus malleus and a rigid hammertoe deformity. (R. at 659.) This deformity makes it difficult for Plaintiff to balance, resulting in several falls. (R. at 23-24.) According to the Plaintiff's testimony, she suffered approximately four falls during the 2012 calendar year; in 2013, she fell several more times, including one fall that led to a broken wrist and another fall that led to a broken rib. (R. at 23-24, 678-693.)

Plaintiff also has issues with her hands due to an automobile accident in 2007, which caused fractures that developed into deformities in the metacarpophalangeal joint of the middle and index fingers on her right hand. (R. at 399.) The records show that Plaintiff has mild-to-moderate difficulty opening doorknobs with her right hand, mild-to-moderate difficulty with "pinch strength" in her right hand, and cannot make a fist. (R. at 404.) Plaintiff also testified that she had developed numbness in her right hand. (R. at 25.)

Plaintiff suffers from neck and back conditions, as well. Plaintiff has received chiropractic treatment for thoracic and cervical spine issues. (R. at 126, 737-741.) Diagnostic testing showed that Plaintiff has subluxation at the C3/C4 and C4/C5 veterbrae, cervical spondylosis and degenerative disc disease in her cervical spine. (R. at 701.) An x-ray of the

Plaintiff's lumbar spine showed degenerative arthritic changes of L4-L5 and L5-S1 vertrabrae, with minimal disc protrusion of L1-L2.[2] (R. at 755.)

Plaintiff underwent several medical examinations before the hearing, which were submitted to the ALJ. The Court will only focus on those most pertinent to the issues before it in this opinion. First, Plaintiff underwent an Internal Medicine Consultative Evaluation with Dr. Dennis Malecki, M.D., on June 4, 2011. (R. at 399.) Dr. Malecki found that Plaintiff had: 1) post-traumatic degenerative joint disease in her right foot and hand, 2) rotator cuff surgery, "status-post surgery x2 with persistent pain and decreased activity," 3) asthma, 4) degenerative joint disease of the cervical spine, 5) gastritis, 6) hypertension, 7) depression, and 8) scoliosis. (R. at 402-03.)

Dr. James Hinchen, M.D., produced a residual functional capacity assessment on April 12, 2012. (R. 107.) He opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, could stand, sit, or walk for 6 hours each in 8-hour day, was limited in pushing and pulling with her left arm. (R. at 107-116.) She should never climb ladders, ropes or scaffolds, only occasionally, stoop or climb stairs and ramps, should avoid concentrated exposure to extreme cold and hazards, and was able to frequently kneel, crouch, and crawl. (*Id.*) She was limited in reaching with her left arm, but not limited at all in fingering or feeling. (*Id.*)

Plaintiff's treating physician, Dr. Raymond Pollack, M.D., issued a General RFC Questionnaire on December 13, 2013. (R. at 759-766.) At that time, he had been treating the Plaintiff for approximately 8 months. Dr. Pollack's report stated, *inter alia*, that Plaintiff: 1) was incapable of tolerating even low stress jobs, 2) needed a can to ambulate and could not ambulate effectively unassisted to perform daily activities, 3) could not function on a part-time basis in a

---

[2] Plaintiff also suffers from knee pain, respiratory issues, depression, and anxiety. Because those conditions do not factor into the Court's decision, it will not discuss them at length.

3

competitive work setting, 4) had moderate impairment in activities of daily living, 5) may need to lie down or recline periodically throughout the day to relieve her symptoms, 6) would experience fatigue that would severely impair her ability to work, 7) was limited to walking a half block, sitting for 20-30 minutes, and standing for 20-30 minutes, 8) could never stoop, climb, kneel, crouch, crawl, pull, or push, and occasionally bend, twist, reach, and grasp, and 9) could stand, sit, or walk for a total of about 2 hours each in an 8-hour day. (*Id.*) Dr. Pollack further noted that Plaintiff's "ability to work in a competitive job is extremely limited by her underlying condition." (R. at 765.)

At the hearing before the ALJ, a medical expert ("ME"), Dr. Ashok Jilhewar testified. (R. at 56.) After summarizing the medical evidence, he opined that Plaintiff could work full-time in a sedentary capacity. (R. at 69.) He further stated that Plaintiff could frequently carry and lift up to 10 pounds, could sit up to six hours in an eight-hour workday, could walk or stand for up to two hours in a six-hour workday if done 30 minutes at a time, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, could never climb ladders, ropes, or scaffolds, was limited to frequent gross and fine manipulations, and could frequently reach in all directions with her left arm, but never reach overhead. (R. at 69-71.)

Following the hearing, the ALJ determined, *inter alia*, that: 1) Plaintiff may have engaged in substantial gainful activity since January 1, 2012, but reserved the issue; 2) Plaintiff's severe impairments include degenerative disease of the cervical spine and left shoulder, status post hemiarthoplasty (shoulder replacement), hallux malleoli of the right foot and right hammertoe, degenerative joint disease of the knees, deformation atrophy of the right fingers, degenerative disease of the lumbar spine, status post wrist fracture, history of bronchial asthma, history of pneumonia, hypothyroid, hypertension, and hemangioma; 3) Plaintiff's impairments do

not meet, either individually or in combination, the severity requirements of the listing in 20 CFR 404, Subpart P, Appendix 1; and 4) the Plaintiff has the Residual Functional Capacity ("RFC") necessary to perform her previous skilled, sedentary work as an administrative assistant.[3]

In reaching his decision, the ALJ gave "significant weight" to the ME, and "some weight" to Dr. Hinchen. (R. at 133.) The ALJ did not state what weight he gave to Dr. Malecki's opinion. The ALJ stated that the opinion of Dr. Pollack, Planitiff's treating physician, "was given little weight for his rather extreme functional assessment, which was not consistent with the medical evidence." (R. at 133.) When recounting Dr. Pollack's opinion, the ALJ inserted several parenthetical asides throughout the relevant paragraph, which presumably mark the supposedly "extreme" opinions that the ALJ believed were contrary to the medical evidence. Among these, the ALJ noted that the record revealed that Plaintiff had recently worked part time (whereas Dr. Pollock opined that Plaintiff was not capable of part-time work in a competitive setting), and that the medical record contained no "on-going reference to hand dysfunction." (R. at 130.) The ALJ did not provide additional analysis beyond his finding that Dr. Pollack's opinion was "extreme" and not supported by the medical evidence in this case.

---

[3] The ALJ's RFC assessment included the following limitations and caveats: Plaintiff could lift and/or carry up to 10 pounds occasionally, and up to 10 pounds frequently; push and pull up to a weight equivalence of 10 pounds frequently; stand or walk with normal breaks for up to a combined total of two hours in an eight-hour workday, and for no more than 30 minutes continually; sit with normal breaks for up to six hours in an eight-hour workday; Plaintiff had to avoid climbing ladders, ropes, or scaffolds, but could otherwise climb stairs and ramps, balance, stoop, knee, crouch and crawl occasionally; could not perform manipulative tasks with her right hand on more than a frequent basis; could not reach overhead with her left arm but could reach in all other directions frequently; must avoid extreme cold or humidity in the work place and avoid concentrated exposure to fumes, odors, dusts, gases, and other irritants; should avoid workplace hazards like unprotected heights; could not perform work that required operating a motor vehicle; and could not perform work that would require looking upward from a face forward position. (R. at 125.)

5

**DISCUSSION**

**I. Standard of Review**

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error. *See* 20 C.F.R §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This standard is satisfied even if the ALJ makes only a "minimal[] articulat[ion of her] justification." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

**II. The ALJ Improperly Discounted the Treating Physician's Opinion**

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If an ALJ does not give the opinion controlling weight, she must evaluate six criteria in deciding how much weight to afford a medical opinion: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009). An opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating

physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Although it is questionable whether the ALJ properly considered all of the factors listed above, the most troubling part of his analysis is that he did not appropriately consider whether Dr. Pollack's opinion was consistent with the entire record. First, the ALJ's discussion of this factor is limited to an unsupported assertion that the opinion was "extreme" and not consistent with the record. There is no detailed consideration or explanation of how or why Dr. Pollack's opinion was inconsistent with the records as whole.

Second, to the extent that this Court considers the ALJ's aforementioned parenthetical notes as explanations for the ALJ's conclusion, those explanations misstate the evidence in the record. With regard to the ALJ's assertion that the medical record contained no "on-going reference to hand dysfunction," the ALJ is ignoring Dr. Malecki's findings that Plaintiff had deformities in her right hand that created mild-to-moderate difficulty opening doorknobs with her right hand, mild-to-moderate difficulty with "pinch strength" with her right hand, and an inability to make a fist.[4]

As for Dr. Pollock's finding that Plaintiff was not capable of part-time work in a competitive setting, the ALJ cited the fact that Plaintiff was working part time at the time of the hearing as evidence that undermined Dr. Pollack's opinion. (*See* R. at 130.) Notably, Dr. Pollock's report includes a hand-written note circling the word "competitive" in the question asking whether Plaintiff was capable of functioning part-time in a competitive work setting, and stating "not a competitive work setting for sure." (R. at 760.) It appears that Dr. Pollock's opinion was based on the distinction between competitive and non-competitive work

---

[4] This is also not consistent with the ALJ's own opinion, which mentions one page later that Plaintiff suffered "deformities of the finger" and "degenerative joint disease of the right 2nd and 3rd MCP joints of the right hand." (R. at 131.)

7

environments, and he believed that the Plaintiff was unable to work in a competitive environment.

The evidence in the record supports this opinion. At the time of her hearing, the Plaintiff worked as a cashier at a "general store," and testified that she was able to take breaks whenever she needed, allowed to sit on a stool while working the register (unlike her co-workers), and that they would not let do anything besides operate the cash register, including lifting more than five pounds (her co-workers have to lift up to 50 pounds) or bending.[5] (R. at 27-28, 48.) In other words, the evidence showed that Plaintiff was not working in a competitive environment, and the the fact that Plaintiff had worked part time -- which the ALJ relied on to discount Dr. Pollack's opinion – is not proof to the contrary. In short, the ALJ improperly discounted Dr. Pollock's opinion by both failing to adequately explain how his opinion was inconsistent with the medical evidence, and in some instances incorrectly identifying portions of Dr. Pollack's opinion that were, in fact, consistent with the record. As such, his decision is reversed and this case is remanded.

### III. On Remand, the ALJ Should Apply the New Policy Ruling On Credibility

The Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p. Although the Court does not make a ruling on the issue of credibility at this time, there are certain concerns that the Court would like

---

[5] Plaintiff also testified that at two of her most recent jobs before the hearing, she had fallen while at work. (R. at 29.) In one instance, Plaintiff tripped over a rug while working as a part time temporary administrative assistant and "fell on [her] face." In another, Plaintiff was working at an amusement park part time, and tripped over a crack on the sidewalk. (R. at 29-30.)

8

the ALJ to address on remand. In particular, SSR 16-3p states that it is "not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms;" instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

Here, the ALJ failed to engage in this process. The opinion is a recitation of the medical evidence with boilerplate language serving as bookends. It begins with a claim that "the claimant's statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely credible," and concludes, after seven pages summarizing the medical records, with a statement that "the residual functional capacity assessment is supported by the substantial weight of the evidence of record, the conservative nature of claimant's course of treatment during the time period relevant to this decision, and the claimant's own acknowledged level of daily activity." (R. at 125-134.) Unfortunately, what is missing from this opinion is an analysis of *how* or *why* the ALJ reached this conclusion, or the type of inquiry required by SSR 16-3p, leaving this Court to guess on how the ALJ came to his decision on Plaintiff's symptoms. On remand, the ALJ should take care to heed the requirements of SSR 16-3p.

## CONCLUSION

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 17].

**ENTER:**
**DATED:** May 17, 2016

Susan E. Cox, U.S. Magistrate Judge